■ In the Matter of BEE LINE, INC., Petitioner, against BENJAMIN F. FEINBERG et al., Constituting the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, et al., Respondents.— This is a review under article 78 of the Civil Practice Act of a determination of the Public Service Commission granting to respondent Valley Stream Bus Corp. a permit to operate as a contract carrier of passengers by motor vehicle for the transportation of chartered parties from all points in Nassau County to all points in New York City, Nassau, Suffolk, Orange, Rockland and Westchester Counties; and from any such points or places to Nassau County when such transportation completes a round trip by the same chartered party. Petitioner herein, the Bee Line, Inc., which opposed the granting of the permit aforesaid, operates a regular omnibus line out of Rockville Centre, Nassau County, and is also the holder of Grandfather Rights as a contract carrier. Prior to September 1, 1955 the only carriers of passengers by motor vehicle subject to regulation by the Public Service Commission were omnibus lines as defined in the Public Service Law (§ 2, subd. 28). To engage in that business a certificate of public convenience and necessity was required; corporations so engaged had to be incorporated under the Transportation Corporations Law (art. 5); and local consent for such operations might be required. Contract carriers, that is, chartered bus carriers, were not so regulated or circumscribed. On September 1, 1955, with the enactment of article 10 and related provisions of the Public Service Law, the Legislature brought contract carriers under regulation. They were to be issued permits instead of certificates of public convenience and necessity, and their corporate form was not prescribed, nor were they required to obtain local consents in any case. Under the new statute the operators of omnibus lines were given the right to a permit simply upon an application therefor. Those contract carriers, other than omnibus line operators, who had been in bona fide operation on February 1, 1955, and since that time, were given the right to a permit without the requirement of further proof that such operations were consistent with the public interest if application was made to the commission within 120 days after the effective date of the statute, September 1, 1955, that is, on or before December 30, 1955. This in effect provided for so-called Grandfather Rights (Public Service Law, §§ 160–164). New operators, who were not contract carriers prior to the enactment of the new statute or during the intermediate period between February 1 and September 1, 1955, might obtain permits but would have to demonstrate to the commission that the issuance of such a permit was consistent with the public interest without reference to past activities. In this case the application of the respondent Valley Stream Bus Corp. for a permit to operate as a contract carrier was not made until January of 1957, or more than 120 days subsequent to the effective date of the statute. It is the contention of the petitioner herein that under this circumstance the Public Service Commission was required to find public convenience and necessity before it could issue a permit to respondent as a contract carrier. Respondent and commission argue that it was not necessary under the statute to treat the respondent Valley Stream as a new applicant, although it had filed an application for a permit on a form designed for new operators. Accordingly the commission took evidence of all the respondent's charter bus operations since 1952, although technically it had operated illegally after the four-month period following the effective date of the statute, and had engaged in some illegal interstate trips. The commission argues that it did not do so upon the basis of any Grandfather Rights, since they had been lost by the reason of late filing,

but rather upon the basis of all the evidence which, in its judgment, demonstrated that the continuance of respondent's operations would be in the public interest. We cannot say as a matter of law that the commission's determination as to public interest and compliance with legislative policy was improper. The evidence of respondent's past contract carrier operations was indicative of its capacity to provide continued service in the public interest. Obviously of course the issuance of a contract carrier permit to respondent would create competition with petitioner's business but petitioner was not a utility that could claim a monopoly. The mere fact of competition, which incidentally existed before the effective date of the statute, is not something that stamps the commission's determination as unlawful. Matters of public interest and policy within the framework of the statute are largely entrusted to the judgment of the commission, and the latter is the guardian of the public interest in these matters. Entrusted with a range of discretionary authority in this instance the commission was not required to find public convenience and necessity but simply that the issuance of a permit would be consistent with the public interest. The exercise of discretionary authority by the commission was particularly essential in the construction and administration of a new statute, such as the one under consideration, which brought under regulation a vast number of carriers not theretofore subject to regulation. The fitness of respondent to perform as a contract carrier is challenged. It is true that respondent is a small operator and most of its school type buses have been used for school purposes but it is also true that a larger portion of its carrier business has been carrying children in chartered buses on various trips; and the commission concluded upon substantial evidence that such buses were adequate to conduct its past operations and thus justify their continuance which the permit was designed to authorize. Determination confirmed, with $50 costs and disbursements. Foster, P. J., Bergan, Gibson and Herlihy, JJ., concur.